UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KRISTEN SCHATZ and PATRICK WITTY,
individually and on behalf of all others similarly
situated,

                          Plaintiff,

            -vs-


CELLCO PARTNERSHIP d/b/a/ VERIZON
WIRELESS,

                          Defendant.

10 Civ. 5414 (RJH)

**<u>MEMORANDUM OPINION</u>**
**<u>AND ORDER</u>**

Richard J. Holwell, District Judge:

> Before the Court is a motion, pursuant to sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, by plaintiffs Kristen Schatz ("Schatz") and Patrick Witty ("Witty," and, together, the "plaintiffs") to compel defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") to arbitrate.  The plaintiffs ask the Court (1) to order Verizon to arbitrate a claim, pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1 *et seq.*, or, alternatively, the New York General Business Law § 349, for "general injunctive relief" benefitting all Verizon customers currently being charged $99.99 per month for Verizon's Nationwide Unlimited Plan ("NUP"), and (2) to declare invalid a provision in the parties' arbitration agreement that purports to limit the arbitrators' power to award such relief.  Since the Court already has referred all claims in this action to arbitration, and since the question of the availability of "general injunctive relief" must be left to the arbitrators in the first instance, the plaintiffs' motion is denied without prejudice to plaintiffs' right to move to vacate any future arbitration award.

## BACKGROUND

Plaintiff Schatz was a customer of Verizon. (Amended Complaint ("AC") ¶ 27.) Pursuant to a two-year contract with Verizon, Schatz obtained cell-phone service from Verizon under its Nationwide Unlimited Plan ("NUP"). (*Id.*)  Schatz paid $99.99 per month for this service. (*Id.*)  On January 18, 2010, Verizon lowered the price of its NUP from $99.99 per month to $69.99 per month. (*Id.* ¶ 30.)  Verizon, however, did not notify Schatz of this change and did not reduce her monthly payments. (*See id.* ¶¶ 30-31.)  In April 2010, when Schatz learned of Verizon's decision to reduce the price of the NUP, she called Verizon and requested that she be charged the lower amount. (*Id.* ¶ 31.)  Verizon agreed without objection, but refused to refund Schatz the excess she had paid between the time Verizon enacted the price decrease and the time Schatz requested it. (*Id.*)  Schatz alleges that Verizon's conduct amounts to a breach of its obligations under a Customer Agreement to which Schatz agreed as part of her contract with Verizon. (*See id.* ¶ 36.)  Schatz represents that the Customer Agreement requires Verizon to notify its customers of any changes in the NUP and that customers agree to the terms of any change by continuing to use the NUP after such notice is given. (*See id.* ¶ 29.) Schatz also alleges that Verizon's conduct violates the New Jersey Consumer Fraud Act, or, alternatively, the New York General Business Law § 349. (*See id.* ¶ 42-43.)

In July 2010, Schatz filed this putative class action "on behalf of all Verizon wireless telephone customers with the individual Nationwide Unlimited Plan ('NUP') as of January 18, 2010 who were charged amounts in excess of the $69.99 monthly price that became effective for the NUP on January 18, 2010." (*Id.* ¶ 19.)  The plaintiffs sought relief on behalf of the class to require, among other things, "Verizon to specifically perform its Customer Agreement with all customers entitled to but not yet being charged the $69.99 price for their NUP." (*Id.*, "Prayer for

Relief" ¶ D.)  On November 1, 2010, Verizon moved to compel arbitration of Schatz's individual

claim based on an arbitration provision in the Customer Agreement that provides,

> You and Verizon Wireless both agree to resolve disputes only by arbitration or in
> small claims court.  There's no judge or jury in arbitration, and the procedures
> may be different, but an arbitrator can award the same damages and relief, and
> must honor the same terms in this agreement, as a court would.  If the law allows
> for an award of attorneys' fees, an arbitrator can award them too.  We also both
> agree that:
>     (1) The Federal Arbitration Act applies to this agreement.  Except for
> small claims court cases that qualify, any dispute that results from this agreement
> or from the Services you receive from us (or from any advertising for any
> products or Services) will be resolved by one or more neutral arbitrators before
> the American Arbitration Association ("AAA") or Better Business Bureau
> ("BBB").

(Customer Agreement 12-13.[1])  Section 3 of the Customer Agreement's arbitration provision

provides, "This agreement doesn't allow class arbitrations even if the AAA or BBB procedures

or rules would.  The arbitrator may award money or injunctive relief only in favor of the

individual party and only to the extent necessary to provide relief warranted by that party's

individual claim." (*Id.*)  The plaintiffs' current motion seeks to declare invalid the second

sentence of section 3.

      The plaintiffs originally opposed Verizon's motion on the ground that the provision

barring class arbitration (the "class waiver") was unenforceable.  Then, on April 27, 2011, the

Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), and held

that a California state-law rule that rendered class waivers unenforceable under California's law

of unconscionability was preempted by the FAA. *Id.* at 1753.  This Court then directed the

parties to address the effect of *Concepcion* on Verizon's motion to compel arbitration.  In a letter

dated May 11, 2011, the plaintiffs informed the Court that they "have determined not to

challenge the applicability to Verizon's motion to compel arbitration of the majority's holding in

---

[1] The Customer Agreement is attached as Ex. 3 to the Affidavit of Tricia Lancaster, Docket No. 15.

*Concepcion*—that states are preempted under the [FAA] from holding class action waivers in arbitration agreements to be unconscionable and unenforceable." (Letter from William R. Weinstein, May 11, 2011, at 1.[2])  Because the *Concepcion* issue "was the sole focus," (*id.*), of Verizon's motion, the Court granted Verizon's motion to compel arbitration. (*See* Order, May 13, 2011, Docket No. 23.)  The Court also granted the plaintiffs' request for leave to file their current motion, which seeks an order (1) compelling Verizon to arbitrate the plaintiffs' claims under the New Jersey Consumer Fraud Act, or, alternatively, the New York General Business Law § 349,[3] and (2) declaring invalid the second sentence of section 3 of the parties' arbitration agreement, which purports to limit the scope of remedies the arbitrators may award.

## LEGAL STANDARD

Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 2 reflects the "'liberal federal policy favoring arbitration.'" *Concepcion*, 131 S. Ct. at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). This policy extends to agreements to arbitrate certain statutory claims. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1474 (2009); *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000).  However, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral forum." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Thus, where the parties have agreed to arbitrate statutory claims, and where Congress has not manifested an intent that such claims should not be arbitrated, the agreement will be enforced, "so long as the prospective litigant

---

[2] The letter may found at Docket No. 22.
[3] The parties dispute whether the New Jersey or the New York consumer protection statute is applicable to the plaintiffs' claims, but neither party asks the Court to decide that issue here.

effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Mitsubishi*, 473 U.S. at 637.

The Supreme Court, in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), addressed an argument that an arbitration agreement would interfere with the plaintiff's ability to vindicate her rights under the federal Truth in Lending Act ("TILA") because the arbitration agreement was silent on the issue of attorneys' fees and costs.  The plaintiff argued that the agreement's silence on the issue could render arbitration prohibitively expensive and thus deprive her of the ability to assert her statutory claim.  The Supreme Court rejected this argument.  It stated that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.  For the plaintiff in *Randolph*, "[t]he 'risk' that [she would] be saddled with prohibitive costs [was] too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91.

In *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), the Supreme Court considered an argument that a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, could not be subject to arbitration because the parties' arbitration agreement prohibited punitive damages, while RICO allowed treble damages.  The Court declined to determine in the first instance whether the contract's ban on punitive damages in fact prohibited treble damages.  *See id.* at 406-07.  The Court held, "[W]e should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved." *Id.* at 406-07 (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 541 (1995)).  The Court continued,

"[S]ince we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. [Accordingly,] the proper course is to compel arbitration." *Id.* at 407.

The Court of Appeals for the District of Columbia Circuit has taken from these cases two propositions:

> [*F*]*irst,* that the party resisting arbitration on the ground that the terms of an arbitration agreement interfere with the effective vindication of statutory rights bears the burden of showing the likelihood of such interference, and *second,* that this burden cannot be carried by "mere speculation" about how an arbitrator "might" interpret or apply the agreement.

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 81 (D.C. Cir. 2005) (emphasis in original).

In addition, the Second Circuit Court of Appeals recently has applied these principles, in the context of an antitrust action, to hold that if a plaintiff can "adequately demonstrate[]" that the provisions of an arbitration agreement "would effectively preclude any action seeking to vindicate the statutory rights asserted by the plaintiff[]," the arbitration agreement may be unenforceable. *See In re Am. Express Merchant's Litig.*, 554 F.3d 300, 304 (2d Cir. 2009) ("*Am. Express I*") (finding a class waiver in an arbitration agreement unenforceable where the plaintiffs made a "substantial demonstration" that "they would incur prohibitive costs if compelled to arbitrate under the class action waiver," such that "an inability to pursue arbitration on a class basis would be tantamount to an inability to assert their claims at all"), *vacated sub nom. Am. Express Co. v. Italian Colors Rest.*, 130 S. Ct. 2401 (2010), *reaff'd*, 634 F.3d 187 (2d Cir. 2011) ("*Am. Express II*").[4]  In the *American Express* cases, the Second Circuit relied on the "federal

---

[4] On February 1, 2012, the Second Circuit, after *sua sponte* considering the effect of *Concepcion* on its *American Express* decisions, reaffirmed the holdings of those cases. *See In re Am. Express Merchants' Litig.*, No. 06-1871-cv (2d Cir. Feb. 1, 2012) ("*Am. Express III*").  *American Express III* does not alter the analysis of this Memorandum Opinion and Order.

substantive law of arbitrability," *Am. Express II*, 634 F.3d at 194, and its reasoning has not been overruled expressly by the Supreme Court's decision in *Concepcion*.  Indeed, the Second Circuit reaffirmed the holdings of its *American Express* decisions in light of *Concepcion*, *see In re American Express Merchants' Litigation*, No. 06-1871-cv (2d Cir. Feb. 1, 2012) ("*Am. Express III*"), and those decisions today remain the law in this Circuit.[5]

## DISCUSSION

In arbitration, the plaintiffs wish to seek what they call "general injunctive relief" under either the New York or New Jersey consumer-protection statute.  This means the plaintiffs wish to obtain an injunction requiring Verizon to lower the monthly price of its NUP for *all* customers who still are being charged the higher rate of $99.99 per month.  In addition, if the plaintiffs' amended complaint is any indication, in arbitration they also will seek compensatory damages, punitive damages, a declaration that Verizon's conduct violates the consumer protection statutes and the Customer Agreement, and attorneys' fees.

The underlying relief plaintiffs seek in this motion is an order declaring unenforceable the second sentence of section 3 of the arbitration agreement—which limits the relief an arbitrator may award to "money or injunctive relief only in favor of the individual party and only to the extent necessary to provide relief warranted by that party's individual claim" (Customer Agreement at 13)—on the ground that it prevents plaintiffs from vindicating their asserted statutory rights under the applicable consumer-protection statute.

---

[5] In light of *Concepcion*, there is some reason to question the applicability of this framework to claims, like plaintiffs', that are based on state, rather than federal, law because *Concepcion* itself "involved the vindication of state, not federal, rights." *Raniere v. Citigroup, Inc.*, --- F. Supp. 2d ----, ----, No. 11 Civ. 2448, 2011 WL 5881926, at * 13 (S.D.N.Y. Nov. 22, 2011).  Accordingly, it is possible to read *Concepcion* "broadly to acquiesce to the enforcement of an arbitral agreement that as a practical matter would prevent the vindication of state rights in the name of furthering the strong federal policy favoring arbitration." *Id.* (dicta).  However, because, as discussed below, the question of the availability of "general injunctive relief" must be left to the arbitrators in the first instance, the Court need not address the question here.

"In analyzing a given vindication of statutory rights claim, [the Court] must first decide who the proper decision maker is for such a claim:  an arbitrator or a court." *Kristian v. Comcast Corp.*, 446 F.3d 25, 37 (1st Cir. 2006).

In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court reiterated that "question[s] of arbitrability" are presumptively for the court, not the arbitrator, unless the parties have "clearly and unmistakably" agreed otherwise. *Id.* at 83.  The Court in *Howsam* recognized two categories of disputes that constitute clear questions of arbitrability. The first category includes "dispute[s] about whether the parties are bound by a given arbitration clause." *Id.* at 84.  The second category encompasses "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.*  These "question[s] of arbitrability" are left to the court because they refer to

> the kind of narrow circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84.

The parties here agree that this dispute does not fall into *Howsam*'s first category of "question[s] of arbitrability"—whether the parties are bound by a given arbitration clause.  Both parties agree that they are bound, in the sense that the Customer Agreement, which includes the arbitration agreement, "establishes a valid contractual relationship between [Verizon] and each of its subscribers," *Kristian*, 446 F.3d at 42.  There is some dispute, however, over whether the plaintiffs' motion involves the question of whether a particular dispute falls within the scope of a given arbitration clause.  The answer to this question turns largely on how one defines the parties' underlying dispute.

As relevant to this motion, that dispute involves two questions:  (1) whether Verizon has committed a deceptive business practice in violation of the applicable consumer-protection statute by failing to lower the price of the NUP for existing customers, and (2) if so, whether plaintiffs, proceeding on an individual basis, may obtain in arbitration an award requiring Verizon to lower the price to all customers still being charged the higher rate.  Plaintiffs contend that these two issues together constitute the "claim," and that the Court must decide whether it falls within or outside the scope of the parties' arbitration agreement.  In other words, plaintiffs characterize the issue as whether their claim for "general injunctive relief" falls within the scope of the arbitration clause.  On the merits of that issue, plaintiffs contend that their "general injunctive relief" claim falls outside the scope of the arbitration agreement because while the arbitration agreement provides that "any dispute that results from this agreement or from Services you receive from us . . . will be resolved by one or more neutral arbitrators," it also limits the relief an arbitrator may award to "money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim."[6] (Customer Agreement at 13.)

Verizon, on the other hand, contends that the only "question[] of arbitrability" for the Court to decide is whether the first issue—i.e. whether Verizon violated the consumer-protection statute—falls within the scope of the arbitration agreement.  The second issue—i.e. the

---

[6] It seems rather odd that plaintiffs, as the party seeking to compel arbitration, argue that their claim falls outside the scope of the arbitration agreement.  One ordinarily would expect that the party opposing arbitration would argue that the dispute falls outside the arbitration agreement.  The plaintiffs, however, appear to make the following argument: A claim for general injunctive relief falls outside the scope of the arbitration agreement because the agreement only permits the arbitrator to award relief in favor of an individual, and general injunctive relief does not qualify as such. The arbitration agreement, however, also requires that all claims between the parties be submitted to arbitration. Therefore, the arbitration agreement purports to require an individual to waive any claims for general injunctive relief he or she might have.  The applicable consumer-protection statute, however, provides an individual with the right to seek general injunctive relief.  Accordingly, the argument continues, because an individual cannot be compelled to waive his or her statutory rights through an arbitration agreement, the provision limiting the scope of relief an arbitrator may award is unenforceable.  Plaintiffs then presumably would argue that the offending provision is severable and that the remainder of the arbitration agreement should be enforced.

availability of general injunctive relief—says Verizon, should be left to the arbitrators to decide in the event plaintiffs prevail on the first issue.  With regard to the first issue, both parties agree that a consumer protection claim falls within the scope of the arbitration agreement in the sense that the arbitration agreement is broad enough to encompass claims for alleged violations of the consumer-protection statutes.

Plaintiffs seek support for their position in a recent line of cases arising out of the proposed merger between AT&T Mobility (ATTM) and T-Mobile USA, Inc. *See AT&T Mobility LLC v. Fisher*, 11 Civ. 2245, 2011 WL 5169349 (D. Md. Oct. 28, 2011); *AT&T Mobility LLC v. Bernardi*, 11 Civ. 03992, 11 Civ. 04412, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011); *AT&T Mobility LLC v. Gonnello*, 11 Civ. 5636, 2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011); *AT&T Mobility LLC v. Smith*, 11 Civ. 5157, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011); *AT&T Mobility LLC v. Bushman*, 11 Civ. 80922, 2011 WL 5924666, at *3 (S.D. Fla. Sept. 23, 2011).  After the merger was announced, over one thousand individual customers of ATTM (all represented by the same law firm) filed separate arbitration demands seeking to enjoin the merger pursuant to section 16 of the Clayton Act, or, alternatively, to impose a variety of conditions on the merger's completion. *See, e.g.*, *Smith*, 2011 WL 5924460, at *1.  In response, ATTM filed various actions in United States District Courts throughout the country seeking to preliminarily enjoin those arbitrations on the ground that the customers' claims fell outside the scope of the arbitration agreement.  ATTM's arbitration agreement is similar to the arbitration agreement here.  It provides,

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.

*E.g.*, *id.* at *3.  ATTM's arbitration agreement also provides, "AT&T and you agree to arbitrate all disputes and claims between us.  This agreement is intended to be broadly interpreted." *Id.*

In the ATTM cases, the parties purported to agree that the issue of the scope of the arbitration agreement was a question for the courts to decide.[7]  However, "the parties differ[ed] on what constitutes a 'scope' determination." *Fisher*, 2011 WL 5169349, at *2.  The customers argued, like Verizon does here, that the "scope" determination was limited to the question of whether a Clayton Act claim fell within the scope of the broad arbitration clause. *Id.* at *2-3; *Bernardi*, 2011 WL 5079549, at *4-5, *9.  The question of the relief available under the agreement, the customers argued, was a question for the arbitrator to decide in the first instance.  Two courts expressly disagreed.  In *Bernardi*, the U.S. District Court for the Northern District of California described the customers' argument as "too narrow a reading of the Court's power." *Bernardi*, 2011 WL 5079549, at *4.  The scope question was "not simply limited to whether the Clayton Act claim is arbitrable on its face, but looks to the 'dispute' as a whole to determine if it is arbitrable." *Id.* at *5.  Thus, since "the only relief sought by the individual defendants [i.e. an injunction against the merger or the imposition of conditions upon it] is relief that is foreclosed by the language of the arbitration provision, the demand for arbitration is beyond the scope of disputes that the parties have contractually agreed to arbitrate." *Id.* at *9.  The District Court for the District of Maryland agreed. *See Fischer*, 2011 WL 5169349, at *3 & n.4; *see also Gonnello*, 2011 WL 4716617, at *4.

A third court took a different view.  The U.S. District Court for the Eastern District of Pennsylvania read ATTM's arbitration agreement to mean that "claims brought in an 'individual

---

[7] Indeed, ATTM's arbitration agreement provided, "All issues are for the arbitrator to decide, expect that issues relating to the scope and enforceability of the arbitration provision are for the court to decide." *Smith*, 2011 WL 5924460, at *3.

capacity' are arbitrable, while claims brought in any 'class or representative proceeding' are

prohibited." *Smith*, 2011 WL 5924460, at *4.  With respect to the clause in the arbitration

agreement that limited the arbitrator's remedial powers, the court stated,

> Fairly read, this clause addresses the remedies an arbitrator may award, not whether a particular dispute may be properly arbitrated in the first instance. Stated differently, the aforementioned clause, by its terms, does not constrain the nature of relief an individual party may seek, but rather limits what relief an arbitrator ultimately awards.
>
> Here, Smith's arbitration seeks to enjoin the AT&T/T–Mobile merger or, in the alternative, seeks divestitures and other remedies as may be appropriate to preserve competition in the relevant markets. (Doc. No. 28, at 14).  The arbitration agreement does not prohibit Smith from *seeking* such remedies (assuming, of course, she brought the action in her "individual capacity" and not as part of any "class or representative proceeding"), although the agreement may prohibit the arbitrator from *awarding* the requested relief.  This is not a "question of arbitrability" properly before the court at this time, so we do not resolve it.

*Id.*  The court in *Smith* went on to find that the customers' claims nonetheless fell outside the

scope of the arbitration clause because they amounted, in substance, to claims brought in a "class

or representative proceeding." *Id.* at *6-7.  The court in *Smith*, as well as the other ATTM courts,

found that the consumers' arbitrations bore "all the hallmarks of 'class arbitration' laid out in

*Concepcion.*" *Id.* at *7; *see Bushman*, 2011 WL 5924666, at *2; *Bernardi*, 2011 WL 5079549, at

*4.  First, each consumer represented "but one of over 1,000 people who, represented by the

same firm, filed essentially identical arbitration demands, all seeking the same, non-

individualized relief." *Smith*, 2011 WL 5924460, at *6.  Second, "the multiple, functionally

identical arbitrations . . . would likely result in 'procedural morass,' not 'final judgment," and so

would "sacrifice the principal advantage of arbitration—its informality." *Id.* (quoting

*Concepcion*, 131 S. Ct. at 1751).  Third, the consumers' arbitrations may not have provided

adequate protection to absent third parties, such as T-Mobile, cellular technology companies,

public interest groups, and "the numerous government bodies that are also evaluating the

merger." *Id.*  Finally, the arbitrations implicated the concern that arbitration is poorly suited to the "higher stakes of class litigation." *Id.* at *7 ("The immense magnitude of the risk, i.e., the fate of a $39 billion merger, may pressure ATTM to settle claims that it believes to be meritless."). The consumers' arbitration demands thus implicated the precise concerns about class arbitration that at least in part animated the *Concepcion* decision.  This led all of the ATTM courts to conclude that the consumers were seeking to arbitrate on a "class or representative" basis and that ATTM therefore was "likely to succeed on the merits" of its claim that the customers' arbitration demands fell outside the scope of the arbitration clause. *Id.* at *5-7; *see Bushman*, 2011 WL 5924666, at *2-3; *Gonnello*, 2011 WL 4716617, at *4; *Bernardi*, 2011 WL 5079549, at *4; *Fisher*, 2011 WL 5169349, at *7.

The situation here is in some ways similar.  Most significantly, like the consumers in the ATTM cases, the plaintiffs here seek broad injunctive relief under a statute, and the arbitration agreement purports to prohibit the arbitrator from awarding any relief that extends beyond the individual plaintiffs.  But unlike the consumers (and like ATTM), the plaintiffs argue that the "dispute" sought to be arbitrated—and thus the question for the Court at this stage—*includes* the question of whether the particular relief sought is permitted under the agreement.  In this regard, *Smith*'s reading of the remedial limitation provision is most persuasive:  "Fairly read, this clause addresses the remedies an arbitrator may award, not whether a particular dispute may be properly arbitrated in the first instance. . . .  This is not a 'question of arbitrability' properly before the court at this time." *Smith*, 2011 WL 5924460, at *4.  Accordingly, the fact that the arbitration agreement purports to limit the type of relief an arbitrator may award is not enough to warrant the conclusion that plaintiffs' consumer-protection act claims fall outside the scope of the arbitration agreement.  This is especially true here given that the plaintiffs are likely to seek a

variety of relief in arbitration, and neither party has argued that such relief (aside from "general injunctive relief") is prohibited by the agreement.  Thus, the situation here is different than in the ATTM cases, where the *only* relief the consumers sought was barred by the arbitration agreement. *See Gonnello*, 2011 WL 4716617, at *3 (consumers were seeking "as [their] sole relief an injunction against the announced merger or, alternatively, a host of conditions on the merger—none of which are tailored to the individual claimant. . . . Thus, there is nothing to arbitrate which is not foreclosed by the contractual limitation on the relief that may be awarded.").  Looking at the parties' dispute and the agreement as a whole, it reasonably appears that the parties intended to arbitrate plaintiffs' consumer-protection claims, even though the agreement may prohibit a type of relief plaintiffs desire.

In addition, unlike the consumers' arbitrations in the ATTM cases, plaintiffs' claims do not fall outside the scope of the arbitration clause as de facto "class arbitrations."  To be sure, plaintiffs seek general injunctive relief on behalf of other Verizon customers, but their claim for such relief does not "bear[] all the hallmarks of 'class arbitration' laid out in *Concepcion*," *Smith*, 2011 WL 5924460, at *7.  First, there is no indication that plaintiffs plan to file multiple, identical arbitrations.  Thus, there is little reason to believe that the plaintiffs' claims will result in "'procedural morass,' not 'final judgment,'" *id.* (quoting *Concepcion*, 131 S. Ct. at 1751)).  Second, absent parties are unlikely to be inadequately protected.  The only absent parties that potentially would be affected by  plaintiffs' claim for general injunctive relief are existing Verizon customers still being charged the higher monthly rate for the NUP, and their interests with respect to the "general injunctive relief" claim are straightforward and directly in line with the plaintiffs' interests.  *Compare id.* at *6 (noting that in an individual arbitration to enjoin the ATTM merger, T-Mobile, cellular technology consumers, public interest groups, and

government bodies that both oppose and support the merger would lack protection).  Moreover, as the complaint indicates, Verizon willingly lowers the price of the NUP upon a customer's request.  Thus, even an adverse decision on plaintiffs' "general injunctive relief" claim would not appear to preclude the absent customers' from obtaining the lower price on the NUP.[8]  Accordingly, there is little risk that the absent customers' interests may be prejudiced by plaintiffs' seeking "general injunctive relief" on their behalf.  Finally, given that Verizon willingly lowers the price charged to a customer upon the customer's request, there seems little risk of plaintiffs pressuring Verizon to settle claims it believes are meritless. *See id.*

Accordingly, the question of whether a particular form of relief is available under the parties' arbitration agreement is not, under these circumstances, a question of whether a particular dispute falls within the scope of the parties' arbitration agreement.  Thus, the plaintiffs' motion does not present one of *Howsam*'s "clear questions of arbitrability" for the Court to decide. *See Kristian*, 446 F.3d at 42 (where plaintiffs claimed that an arbitration agreement prevented them from vindicating their statutory rights (by, for example, prohibiting punitive damages), plaintiffs' argument did not involve the question of whether their claims fell within the scope of the arbitration provision, but rather the question of whether "arbitration subject to the provisions at issue shields [the defendant] from antitrust liability, and hence

---

[8] While a prior arbitration  may serve under certain circumstances as a basis to foreclose later proceedings, *see Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) ("[C]ollateral estoppel can be predicated on arbitration proceedings"), the absent Verizon customers, as non-parties to an individual arbitration, are unlikely to be precluded by the plaintiffs' arbitration from later asserting their own claims against Verizon. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving *the same parties* or their privies based on the same cause of action." (emphasis added)); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit.").  It is true that in certain circumstances a nonparty to a prior suit may be precluded from litigating issues decided in the prior suit where the nonparty was "'adequately represented by someone with the same interests'" who was a party, *Taylor*, 552 U.S. at 894 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)), but even if that were the case here with respect to plaintiffs' claim for "general injunctive relief," the complaint suggests that Verizon still would prospectively lower the price for the absent customers upon their request, even if plaintiffs' claim for "general injunctive relief" failed.

conflicts with the statutes providing for such liability"); *see also Am. Express I*, 544 F.3d at 309 (vindication-of-statutory-rights claim did not involve question of whether arbitration agreement was broad enough to cover plaintiffs' antitrust claims).

This does not mean, however, that the plaintiffs' motion necessarily fails to raise a question of arbitrability at all.  Indeed, where a plaintiff contends that an arbitration provision prohibits him or her from vindicating statutory rights, the plaintiffs' argument may raise a question of arbitrability for a court to decide, even if the question does not fall into one of *Howsam*'s "clear questions of arbitrability." *Kristian*, 446 F.3d at 42.  For example, in *Randolph*, the Supreme Court "assume[d] that the issue of arbitration costs raises a question of arbitrability." *Kristian*, 446 F.3d at 51; *accord Am. Express II*, 634 F.3d at 197.

The Supreme Court's decision in *PacifiCare* is particularly relevant here.  In *PacifiCare*, the Supreme Court declined to decide in the first instance whether an arbitration provision that prohibited punitive damages was unenforceable on the ground that it prevented a plaintiff from obtaining statutorily authorized treble damages. *PacifiCare*, 538 U.S. at 407.  The Court found ambiguity in the issue of whether the agreement's prohibition on punitive damages in fact prohibited treble damages and stated, "[S]ince we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract.  [Accordingly,] the proper course is to compel arbitration." *Id.* at 407.

"Implicit in the *PacifiCare* analysis is the proposition that if the remedies limitation in the arbitration agreement posed a *clear* conflict with the remedies available in the RICO statute, that clear conflict would pose a question of arbitrability." *Kristian*, 446 F.3d at 46 (emphasis added). In *Kristian*, the Court of Appeals for the First Circuit found such a clear conflict.  There, the

parties' arbitration agreement explicitly prohibited treble damages,[9] while both the federal and Massachusetts antitrust laws under which the plaintiffs brought suit provided for them. *Id.* at 44-45.  That alone, however, did not necessarily indicate a "clear conflict" between the statutory remedies and the arbitration agreement because, if the right to obtain treble damages under the statutes could be waived, the conflict would be resolved. *See id.* at 46-50.  Thus, before determining whether the ostensible conflict posed a question of arbitrability for the court, the First Circuit examined the waiver issue.

With respect to the right to treble damages under the federal antitrust laws, the court found the right unwaivable.  The court noted,

> There is no Supreme Court precedent that speaks directly to the question of whether treble damages under federal antitrust law may be waived by contract. However, in *Mitsubishi*, the Court noted in dicta that if provisions in the arbitration agreement at issue had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."

*Id.* at 47 (quoting *Mitsubishi*, 473 U.S. at 637 n.19).  Accordingly, the First Circuit found the question of whether the ban on treble damages rendered the arbitration agreement unenforceable to be a question of arbitrability for the court to decide. *Id.*[10]

With respect to the state antitrust claims (which were brought by different plaintiffs in a separate complaint), the First Circuit found ambiguity on the waiver issue, and, relying on *PacifiCare*, left the question of enforceability to the arbitrators in the first instance. *See id.* at 50. The court read a case from the Supreme Judicial Court of Massachusetts as "hinting that waiver of statutory remedies will not be allowed in situations involving a consumer plaintiff and/or

---

[9] The arbitration agreement in *Kristian* provided, "IN NO EVENT SHALL WE OR OUR EMPLOYEES OR AGENTS HAVE ANY LIABILITY FOR PUNITIVE, TREBLE, EXEMPLARY, SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES." *Kristian*, 446 F.3d at 44.

[10] The court found that the damages waiver did not render the arbitration agreement unenforceable because of a "savings clause" that provided in substance, "If the law does not permit waiver of a remedy, a plaintiff will still have that remedy, the [arbitration agreement's] liability limitation notwithstanding." *Kristian*, 446 F.3d at 48.

antitrust claims." *Id.*  And because the plaintiffs in *Kristian* were consumers asserting antitrust claims, the First Circuit found the waiver issue "ambiguous at best." *Id.*  Accordingly, "Plaintiffs' vindication of statutory rights claim, based on the conflict between the arbitration agreements and Massachusetts antitrust law, does *not* raise a question of arbitrability." *Id.* (emphasis in original) ("When there is an underlying legal ambiguity, . . . an arbitrator must decide the underlying legal question in the first instance so that the federal policy in favor of arbitration is not frustrated.").

The *Kristian* court's application of *PacifiCare* is persuasive, and the Court is aware of no Second Circuit decision that similarly addresses the analysis to be undertaken when a plaintiff challenges the validity of a remedial limitation contained in an arbitration agreement.[11] *Cf. Disc. Trophey & Co. v. Plastic Dress-Up Co.*, 03 Civ. 2167, 2004 WL 350477, at *6-7 (D. Conn. Feb. 19, 2004) (offering a similar interpretation of *PacifiCare*).  Thus, the Court will apply the principles of *PacifiCare* (as interpreted by *Kristian*) to the plaintiffs' motion.  In that regard, a number of issues require attention.  To conclude that this dispute presents a question of

---

[11] The question of who should decide the enforceability of a class waiver—which the Second Circuit has held to be a question for the court, *see Am. Express II*, 634 F.3d at 191; *accord Kristian*, 446 F.3d at 55—is not the same. Questions of arbitrability are those "'challeng[ing] specifically the validity of the agreement to arbitrate.'" *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  And an arbitration agreement may be invalid if some term or terms in it renders the arbitral forum inadequate by preventing a plaintiff from effectively vindicating his or her statutory rights. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985).  Here, plaintiffs contest the validity of the arbitration agreement's remedial limitation on the ground that it renders the arbitral forum inadequate by preventing plaintiffs from obtaining a specific statutory right (i.e. "general injunctive relief").  Implicit in this argument is the notion that the arbitral forum is inadequate only if the conflict between the statutory right and the arbitration agreement is clear.  If the conflict is ambiguous (whether because of contractual or legal ambiguity with respect to the specific statutory right, *see Kristian*, 446 F.3d at 46 n.15, 50), the alleged inadequacy of the arbitral forum (and thus the alleged invalidity of the arbitration agreement) is speculative, and the strong federal policy favoring arbitration requires that the arbitrator resolve the ambiguity in the first instance.  That is the crux of *PacifiCare*.

By contrast, a class action/arbitration ban, if clear, implicates the adequacy of the arbitral forum (and thus the validity of the arbitration agreement) from the outset because it affects the manner in which a plaintiff may pursue his or her statutory rights in the first instance.  As such, the adequacy of the arbitral forum (and thus the validity of the arbitration agreement) is implicated whenever there is a question of whether an inability to pursue statutory claims as a class amounts to an inability to pursue statutory claims at all. *See Kristian*, 446 F.3d at 54-55. This is a question for the court because, if left to the arbitrators in the first instance, it may never be addressed if indeed the class waiver effectively prevents the plaintiff from arbitrating at all.

arbitrability, the Court must find a clear conflict between the parties' arbitration agreement and the statutorily authorized remedies.  In this context, that means (1) the consumer protection statutes must authorize the "general injunctive relief" the plaintiffs seek, (2) the arbitration agreement must prohibit it, and (3) the right to obtain such relief under the statute must not be subject to waiver.  Ambiguity in those issues will render the question of the clause's enforceability for the arbitrators to resolve in the first instance.

### A.  The Consumer Protection Statutes

The private right of action under New York General Business Law § 349(h) provides:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h).  Similarly, the private right of action under the New Jersey Consumer Fraud Act provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.  In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.  In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J. Stat. Ann. § 56:8-19.

Plaintiffs concede that their arbitrations may not proceed on a class basis.  Nonetheless, plaintiffs contend that under these statutes an individual may obtain injunctive relief effectively

on behalf of others, even if a class device is not used.  Verizon, on the other hand, argues that a class proceeding is necessary to obtain the relief that the plaintiffs desire.

The starting point for this analysis is the language of the statutes.  The New York consumer-protection statute provides, "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice." N.Y. Gen. Bus. Law § 349(h).  The right of action granted to the attorney general similarly provides, "[The attorney general] may bring an action in the name and on behalf of the people of the state of New York to enjoin such unlawful acts or practices." *Id.* § 349(b).  On one hand, the language contained in the attorney general's right of action ("in the name and on behalf of the people") provides at least some suggestion that the injunctive relief the attorney general may obtain is broader than the injunctive relief available to an individual suing "in his own name" (and not "on behalf of" anybody).  The language also may suggest that in order for an individual suing in his own name to obtain the same scope of injunctive relief as the attorney general, the individual must act "on behalf of" others, which plaintiffs here acknowledge they cannot do (at least in terms of proceeding as a class).

On the other hand, both the attorney general's right of action and the private right of action permit the plaintiff "to enjoin such unlawful act[s] or practice[s]."  Nothing in the private right of action purports to limit the scope of injunctive relief an individual suing "in his own name" may obtain, as long as the individual "has been injured by reason of any violation of this section."  In addition, the language at the beginning of the private right of action ("In addition to the right of action granted to the attorney general") suggests some level of equivalence between the scope of injunctive relief obtainable by an individual suing in his own name and that

obtainable by the attorney general on behalf of the people of New York.  Indeed, one of the

purposes of the act is "to supplement the activities of the New York State Attorney General in

prosecuting consumer fraud complaints."  *McDonald v. North Shore Yacht Sales, Inc.*, 513

N.Y.S.2d 590, 594 (Sup. Ct. 1987).  Thus, the statute itself does not provide a clear answer to the

question whether plaintiffs would be entitled to obtain their "general injunctive relief" absent a

class proceeding.[12]

Verizon contends that plaintiffs' position is meritless because all of the cases plaintiffs

cite for the proposition that an individual may obtain "general injunctive relief" are either class

actions or suits by individual parties seeking relief that benefits only themselves. *See Weinberg v.*

*Sprint Corp.*, 801 A.2d 281, 291 (N.J. 2002) (class action); *Oswego Laborers Local 214 Pension*

*Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20 (1995) (pension funds brought suit on their

own behalf); *Goldman v. Simon Property Group, Inc.*, 58 A.D.2d 208 (N.Y. 2d Dep't 2008)

(class action).  For example, plaintiff relies on *Goldman v. Simon Property Group, Inc.*, 58

A.D.2d 208 (N.Y. 2d Dep't 2008).  In *Goldman*, the plaintiff sued the defendant under the New

York consumer-protection statute for selling gift cards that were subject to a "dormancy fee" of

$2.50 per month after seven months, without proper notice to the purchasers or cardholders. *Id.*

at 211.  The plaintiff sought an injunction against the practice, including an order prohibiting the

defendant from continuing to deduct the fee from certain cards that remained outstanding. *See id.*

at 212, 218.  The New York Supreme Court, Appellate Division, held that the trial court should

not have dismissed plaintiff's claim for injunctive relief. *Id.* at 218.  The plaintiffs here contend

that *Goldman* was brought by an individual and not as a class action.  But *Goldman* clearly

---

[12] The language of the New Jersey Consumer Fraud Act is similarly unclear on the issue.  With respect to remedies available, the statute states that a court must award treble damages and attorneys' fees, and may award "any other appropriate legal or equitable relief." N.J. Stat. Ann. § 56:8-19.  There is little in the statutory language to determine whether "appropriate" equitable relief for an individual may include relief on behalf of absent parties.

states, "The plaintiff filed an amended class action complaint." *Id.* at 212.  Accordingly,

*Goldman* does little to help plaintiffs.

The Court, however, has identified at least one case in which an individual plaintiff was

able to obtain a preliminary injunction against false advertising under New York General

Business Law § § 350-e.[13]  In *McDonald v. North Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590

(Sup. Ct. 1987), the plaintiff (acting only individually) sought a preliminary injunction against

advertising by a yacht manufacturer that did not make clear that certain representations in its ads

were subject to change without notice. *See id.* at 592-94.  The court granted the preliminary

injunction, which prohibited the yacht manufacturer from conducting "any advertising in New

York State which fails to state that the equipment and/or accessories on Hunter Boats may be

subject to change by Hunter without notice." *Id.* at 595.  With respect to the irreparable harm

prong of the preliminary injunction analysis, the court held:

> Given the aforecited purpose of the statute, to encourage private enforcement of
> consumer protection, to strongly deter deceptive business practices, and to
> supplement the activities of the New York State Attorney General in prosecuting
> consumer fraud complaints, I hold that the Legislature intended the irreparable
> injury at issue to be irreparable injury to the public at large, not just to one
> consumer.

*Id.* at 593-94.  The court made no mention of the fact that the plaintiff had brought suit

individually, and not as a class action.  Thus, there is authority to support the plaintiffs' position

that an individual may seek an injunction for the benefit of the public under New York's

consumer-protection statutes.

An injunction against false advertising, however, more clearly amounts to relief sought to

benefit the "public at large," *id.* at 594, than would an order directing Verizon to lower the price

---

[13] Section 350-e contains a private right of action materially identical to the private right of action in section 349(h).
Section 350-e provides, "Any person who has been injured by reason of any violation of section three hundred fifty
or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or
practice." N.Y. Gen. Bus. Law § 350-e.

of its NUP for a definable class of existing customers. A false advertisement potentially may impact any member of the public that utilizes the channels of communication through which the advertisement is broadcast. By contrast, the alleged illegal conduct that plaintiffs seek to enjoin impacts only a distinct group of existing customers. In that sense, plaintiffs' claim for "general injunctive relief" is less like an injunction in favor of "the public at large," *id.*, and more like a claim simply asserting the rights of others to receive lower prices. So viewed, plaintiffs' general injunctive relief claim would contravene the notion that "one does not, as a general rule, have standing to assert claims on behalf of another." *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 62 (App. Div. 2d Dep't 2006) (citing *Soc'y of Plastics Indus. v. County of Suffolk*, 573 N.E.2d 1034 (1991); *Matter of Hebel v. West*, 803 N.Y.S.2d 242 (App. Div. 3d Dep't 2005)); *see also Jersey Shore Med. Ctr.-Fitkin Hosp. v. Baum's Estate*, 417 A.2d 1003, 1007 (N.J. 1980) ("Ordinarily, a litigant may not claim standing to assert the rights of a third party.").

Of course, there is a sensible public policy argument supporting the ability of an individual consumer to seek an injunction against a defendant's allegedly fraudulent consumer practices. To the extent the consumer protection acts authorize individuals to act as private attorneys general, it is sensible to interpret the acts to permit an individual to obtain broad injunctive relief. Moreover, as a practical matter, it would make little sense to require thousands of individual consumers to bring individual consumer protection act claims to stop a practice after one consumer has succeeded in showing that the practice is fraudulent. Without resolving the conflicting policies, the Court simply points out that the language of the statute is open to varying interpretations, which suggests that the issue should be left to the arbitrators to decide in the first instance.

**B.  The Arbitration Agreement**

The parties' arbitration agreement provides, on the one hand, that the arbitrators may "award the same damages and relief . . . as a court would." (Customer Agreement 12.)  This presumably would include the "general injunctive relief" the plaintiffs here seek, provided such relief in fact were available to an individual plaintiff under the consumer protection statutes.  On the other hand, the arbitration agreement purports to limit the arbitrators' remedial powers.  The agreement provides, "[T]he arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." (*Id.* at 13.)  This clause would seem to prohibit the arbitrator from ordering Verizon to lower the prices being charged to a group of customers based on the claim of an individual customer.

While these provisions at first glance might suggest that there is some ambiguity in the agreement, a closer inspection reveals otherwise.  A contract is ambiguous where it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 914 (2d Cir. 2010) (internal quotation marks omitted).

Here, the provision stating that an arbitrator may award the same relief as a court is contained in a sentence that provides in full, "There's no judge or jury in arbitration, and the procedures may be different, but an arbitrator can award the same damages and relief, and must honor the same terms in this agreement, as a court would." (Customer Agreement at 12.)  This provision is best considered a "description of the arbitration process and how it operates."

*Gonnello*, 2011 WL 4716617, at * 4.  As such, it "does not supplant the specific limitations . . . regarding the type of declaratory or injunctive relief that may be awarded." *Id.*; *see Bushman*, 2011 WL 5924666, at *3 (S.D. Fla. Sept. 23, 2011) (construing a materially similar arbitration clause); *see also County of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001) ("It is axiomatic that courts construing contracts must give 'specific terms and exact terms . . . greater weight than general language.'" (quoting *Aramony v. United Way,* 254 F.3d 403, 413 (2d Cir. 2001))). Accordingly, it is clear that the arbitration agreement would prohibit an arbitrator from awarding the "general injunctive relief" that the plaintiffs desire.

### C.  Waiver

Although the arbitration agreement may prohibit plaintiffs from obtaining the relief they desire, that prohibition may not raise a question of arbitrability if the law is ambiguous on the plaintiffs' ability to waive the right (if any) to such relief. *See Kristian*, 446 F.3d at 49-50 (where arbitration agreement prohibited treble damages, and where state statute permitted them, no question of arbitrability was raised where the waiver issue was ambiguous).  In that regard, the New York Court of Appeals has held, "Generally and excepting instances where there would be transgressions of public policy, all rights and privileges to which one is legally entitled, Ex contractu or Ex debito justitiae, may be waived." *Hadden v. Consol. Edison Co. of N.Y., Inc*., 382 N.E.2d 1136, 1138 (N.Y. 1978); *see also Midland Funding, L.L.C. v. Giambanco*, 28 A.3d 831, 837 (N.J. Super. Ct. App. Div. 2011) ("We first begin our discussion by reiterating the well-settled principle that parties, by agreement, may waive statutory and constitutional rights." (citations omitted)).  Notably, courts in New York have permitted plaintiffs to waive their right to treble damages under New York General Business Law section 349(h) in order to allow the plaintiffs to bring their claims as class actions. *See Leider v. Ralfe*, 387 F. Supp. 2d 283, 292-93

25

(S.D.N.Y. 2005); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.,* 517 N.Y.S.2d 764, 767 (App. Div. 2d Dep't 1987).[14]  However, the ability to waive a statutory right is not unlimited. *See Berkovich v. Mostovaya*, 875 N.Y.S.2d 741, 744 (App. Term 2009) ("'[A] statutory right conferred on a private party, but affecting the public interest, may not be waived or released if said waiver or release contravenes the statutory policy.'" (quoting *Estro Chem. Co. v. Falk*, 100 N.E.2d 146, 148 (N.Y. 1951))).

There is a credible argument, then, that a waiver of an individual's right to seek an injunction to protect the public at large contravenes the statutory policy behind section 349(h). Indeed, in discussing the statute, the New York Court of Appeals has noted, "'The power to obtain injunctions against any and all deceptive and fraudulent practices will be an important new weapon in New York State's long standing efforts to protect people from consumer frauds.'" *Oswego Laborers' Local 214*, 85 N.Y.2d at 25 (quoting Mem. of Governor Rockefeller, 1970 N.Y. Legis. Ann., at 472).  But the "new weapon" referred to by the Court of Appeals was the right of action afforded to the attorney general.  And, of course, an "arbitration agreement[] [in a consumer contract] will not preclude the [attorney general] from bringing actions seeking class-wide and equitable relief." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991).[15]  But whether an arbitration agreement permissibly may preclude a private action seeking "general injunctive relief" is less clear.  Thus, the purpose of the private right of

---

[14] Such a waiver is necessary to allow a class action under section 349(h) because N.Y. C.P.L.R. section 901(b), which sets out the prerequisites for a class action suit, prohibits a plaintiff from bringing a class action "to recover a penalty or minimum measure of recovery created or imposed by statute," unless the statute "specifically authorizes the recovery thereof in a class action."  Because section 349(h) does not specifically authorize class actions and because under New York law treble damages are considered a penalty, *see Leider*, 387 F. Supp. 2d at 288, the waiver allows plaintiffs to comply with C.P.L.R. section 901(b).

[15] The Court of Appeals for the Second Circuit has rejected reading *Gilmer* essentially as an endorsement that class action waivers are not a ground for refusing to enforce an arbitration agreement when the plaintiff contends that the waiver interferes with his vindication of statutory rights. *See Am Express II*, 634 F.3d at 194-96.  But this disfavored reading of *Gilmer* is not squarely implicated in this Court's suggestion that the attorney general's ability to seek relief that plaintiffs cannot is at least relevant in assessing whether New York law would permit plaintiffs to waive the right to seek that relief in the first instance.

action under the New York statute appears to be just as much about allowing individual

consumers to address individual wrongs as it is about permitting an individual to obtain

injunctive relief that benefits both himself and others.[16] *See Watts v. Jackson Hewitt Tax Serv.*

*Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) ("Section 349 is 'meant to empower consumers,'

especially 'the disadvantaged' and to even the playing field of their disputes with better funded

and superiorly situated fraudulent businesses.").

The same is true with respect to the New Jersey statute.  The New Jersey Supreme Court,

in discussing the purposes of the private right of action under the consumer-protection law, noted

that the private right of action

> created an efficient mechanism to:  (1) compensate the victim for his or her actual
> loss; (2) punish the wrongdoer through the award of treble damages; and (3)
> attract competent counsel to counteract the "community scourge" of fraud by
> providing an incentive for an attorney to take a case involving a minor loss to the
> individual.

---

[16] In that regard, the consumer-protection statutes at issue here are somewhat different from statutes like California's
Private Attorneys General Act (PAGA), "the purpose of which 'is not to recover damages or restitution, but to create
a means of "deputizing" citizens as private attorneys general to enforce the Labor Code.'" *Nelson v. AT&T Mobility,
Inc.*, 2011 WL 3651153, at *3 (N.D. Cal. Aug. 18, 2011) (quoting *Brown v. Ralph's Grocery Co.*, 128 Cal. Rptr. 3d
854, 2011 WL 2685959, at *6 (Cal. Ct. App. 2011)).  PAGA permits "representative" actions (which need not meet
class action requirements), in which an individual sues on behalf of himself and other similarly situated employees
seeking civil penalties against the employer for violations of the California Labor Code. *Urbino v. Orkin Servs. of
Calif., Inc.*, --- F. Supp. 2d ----, ----, 2011 WL 4595249, at *3-4 (C.D. Cal. Oct. 5, 2011).  "Under PAGA, of the civil
penalties recovered by the aggrieved employees, 75 percent is allotted to the Labor and Workforce Development
Agency ('LWDA') while 25 percent goes to the aggrieved employees." *Id.* at 3.  Accordingly, a waiver of the ability
to proceed collectively under a statute like PAGA would seem more disruptive to the underlying public purpose of
the statute than would a waiver of the right to obtain injunctive relief on behalf of others pursuant to a statute like
New York General Business Law section 349(h) or the New Jersey Consumer Fraud Act, whose underlying purpose
is both to provide relief to aggrieved individual consumers, as well as to provide a mechanism to stop consumer
fraud.  It bears noting that in light of *Concepcion*, a number of federal district courts in California have enforced
arbitration agreements with class and representative action waivers even though those waivers would prevent an
individual from asserting representative PAGA claims. *See Grabowski v. Robinson*, --- F. Supp. 2d ----, ----, 2011
WL 4353998, at *19-20 (S.D. Cal. Sept. 19, 2011); *Quevedo v. Macy's, Inc.*, No. CV 09–1522, 2011 WL 3135052,
at *17 (C.D. Cal. June 16, 2011) ("[T]he Court concludes that Quevedo's PAGA claim is arbitrable, and that the
arbitration agreement's provision barring him from bringing that claim on behalf of other employees is
enforceable."). *But see Urbino*, 2011 WL 4595249, at *11 ("Because the PAGA arbitration waiver in the Agreement
is unconscionable, and the waiver taints the entirety of the Agreement with illegality, the Court deems the
Agreement unenforceable.").

*Weinberg*, 801 A.2d at 291.  The court said little about the need to allow an individual plaintiff to obtain an injunction in favor of a group of individuals in order to vindicate the private right of action provided in the statute.  Thus, it is not clear that the remedial limitation in the parties' arbitration agreement would not amount to a lawful waiver of their right to seek injunctive relief on behalf of others.

### D.  Conclusion

In sum, although the arbitration agreement prohibits the plaintiffs from obtaining "general injunctive relief," it is not clear whether (1) the state consumer statutes would authorize an individual to obtain such relief in the absence of a class action, and (2) even if such relief were available under the statutes, whether it lawfully could be waived.  "In the presence of this ambiguity, *PacifiCare* is dispositive.  When there is an underlying legal ambiguity, . . . an arbitrator must decide the underlying legal question in the first instance so that the federal policy in favor of arbitration is not frustrated." *Kristian*, 446 F.3d at 50.  Accordingly, plaintiffs' motion does not raise a question of arbitrability, and the arbitrators must decide in the first instance whether plaintiffs are entitled to "general injunctive relief."

In any event, even if the issue posed a question of arbitrability for the Court, under these circumstances the Court would be hard-pressed to say that the plaintiffs' inability to obtain "general injunctive relief" on behalf of others would render the arbitral forum inadequate such that plaintiffs no longer "effectively may vindicate [their] statutory cause of action in the arbitral forum." *Mitsubishi*, 473 U.S. at 637.  Plaintiffs have already received the relief they wish to seek on behalf of others (i.e. the lower price on Verizon's NUP), and they still may obtain actual damages, punitive damages, declaratory relief, and attorneys' fees in arbitration.  Plaintiffs may make (but have not) an argument that given the small size of any individual monetary recovery

in this case (approximately $97 in actual losses for plaintiff Schatz plus at most three times that amount in punitive damages), the deterrent effect of the consumer protection statutes will be diminished significantly if plaintiffs are denied the ability to obtain injunctive relief on behalf of other customers.  But any force that argument otherwise might have is substantially weakened in light of the uncertainty about whether an individual properly may obtain injunctive relief of this sort in the absence of a class action or class arbitration proceeding.  Given this uncertainty, along with the other remedies available to plaintiffs, plaintiffs have not made a "substantial demonstration," *Am Express I*, 554 F.3d at 304, that the remedial limitation renders the arbitral forum inadequate such that the consumer protection statutes will fail "to serve both [their] remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637; *see DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 466 (S.D.N.Y. 1997) (finding, even in light of the "unavailability of injunctive relief under the Smith Barney Arbitration Policy," that plaintiff "could still 'effectively . . . vindicate' her Title VII claims through arbitration, even though the arbitral forum might not 'afford [her] the full panoply of remedies otherwise available in a court of law'" (alteration in original)).

**CONCLUSION**

For the reasons stated above, plaintiffs' motion to compel arbitration [24] is DENIED to

the extent it seeks a declaration that a clause of the arbitration agreement is invalid.  To the

extent it seeks an order compelling arbitration of the plaintiffs' statutory claims, it is DENIED as

moot because the Court already has ordered the parties to proceed with arbitration. (*See* Order,

May 13, 2011, Docket No. 23.)


SO ORDERED.

Dated: New York, New York
       January 3ɪ, 2012

                                                        Richard J. Holwell
                                                    United States District Judge